570 So.2d 1045 (1990)
Joseph PITTMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1858.
District Court of Appeal of Florida, First District.
November 27, 1990.
*1046 Barbara M. Linthicum, Public Defender, and Kathleen Stover, Asst. Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Laura Rush, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Appellant, Joseph Pittman, appeals his convictions and sentences for simple robbery, two counts of resisting arrest with violence, and aggravated assault without a firearm. On appeal, he claims that the post-arrest show-up procedure tainted the victim's in-court identification, and that the enhanced penalty he received under the habitual offender statute, Section 775.084, Florida Statutes (Supp. 1988), is void because the statute is unconstitutional. We affirm the first point without discussion. We also affirm the constitutionality of section 775.084, and briefly address those issues which Pittman raises that were not specifically resolved by this court's decision in Barber v. State, 564 So.2d 1169 (Fla. 1st DCA 1990).
Pittman asserts that the statute (1) violates his right to equal protection because it contains unreasonable classifications, (2) violates his right to equal protection because it gives prosecutors unfettered discretion in determining when to seek the enhanced penalty, and (3) violates his right to due process because it does not apply to the most serious offenses, thus the means used for achieving the statute's purpose is arbitrary and capricious. We considered and rejected each of these arguments with respect to the 1987 statute in Barber.
Pittman also claims that sections 775.084, 775.0842, and 775.0843 are devoid of standards; therefore, the legislature unconstitutionally delegated the function of determining punishment to law enforcement agencies. See, e.g., Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978). In regard to the latter two statutes, there is no indication anywhere in Pittman's brief or the record before us that either statute has anything to do with this case. Pittman moreover fails to substantiate his claim that section 775.084 is "devoid of standards." In Askew, the supreme court considered that it is altogether appropriate for an administrative agency to "flesh out" an articulated legislative policy, but that the legislature impermissibly delegates its authority to an agency if the law "is so lacking in guidelines that neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature in its conduct," because, under such a law, "the agency becomes the lawgiver rather than the administrator of the law." Id. at 918-19. With the above precepts in mind, we conclude that the procedures and criteria contained in section 775.084 provide sufficient guidelines to permit the judiciary to implement the unambiguous legislative policy embodied in the habitual offender statute.
Pittman also claims that section 775.084 contains an internal inconsistency which renders the law fatally vague, in that subsection (4)(a) of the statute provides that once the criteria are met for determining that a defendant is a habitual felony offender, the court "shall" sentence the defendant under the statute, whereas under subsection (4)(b), if the court finds the criteria are met for habitual violent felony offenders, the court "may" sentence the defendant. This court previously construed these provisions in Donald v. State, 562 So.2d 792 (Fla. 1st DCA 1990). A trial court initially has the discretion to determine whether to sentence a defendant under the statute. If the court decides that such sentence is proper, regardless of whether a defendant is a habitual felony offender or a habitual violent felony offender, "then the court is required to impose sentence in conformity with sections 775.084(4)(a) or 775.084(4)(b)." Id. at 795 (emphasis added). In the context of the entire statute, "may" must be given an obligatory meaning. Id. at 794.
Finally, Pittman points out that while the 1988 statute removed the requirement that a trial judge must find that imposition of an enhanced sentence is necessary for the protection of the public, it still permits the court to decline to impose *1047 the statute if the judge finds that imposition of an enhanced sentence is not necessary to protect the public. Pittman claims that the law is therefore vague as to whether the judge still must make such finding. We disagree. Although such finding was previously essential before trial courts could impose the enhanced penalty, courts now have the discretion to consider evidence and decline to apply the enhanced penalty even if the statutory criteria are met. The Second District has stated that this discretionary power is "analogous to a judge's discretion to depart downward based on valid reasons in cases governed by the sentencing guidelines." Arnold v. State, 566 So.2d 37, 39 (Fla. 2d DCA 1990). This determination, again, is within the traditional parameters of the discretion invested in trial judges on matters of sentencing, and the statutory provision is not impermissibly vague.
We emphasize that trial court have long been given wide latitude in sentencing matters. See, e.g., Provence v. State, 337 So.2d 783, 786 (Fla. 1976) ("[T]he constitutional parameters of the trial judge's discretion in the area of sentencing are wide indeed."), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977); Brown v. State, 152 Fla. 853, 857, 13 So.2d 458, 461 (1943) ("[I]t is within the province of the trial court to fix by sentence the punishment within the limits prescribed by statute."). Pittman fails to give any reasons why a trial court should not have such discretion regarding habitual offenders.
AFFIRMED.
BOOTH and BARFIELD, JJ., concur.