THOMAS, J.
 

 Appellants challenge the trial court’s entry of a final summary judgment.
 
 [1]
 
 Although the final summary judgment disposed of all five counts of Appellants’ complaint, Appellants’ appeal concerns only their claims for: 1) tortious interference with a business relationship; 2) defamation; and 3) civil conspiracy.
 
 [2]
 
 We affirm the judgment as to the civil conspiracy claim without further comment. As discussed below, we find that Appellants failed to preserve their arguments as to the first issue. Regarding the second issue, we find that Appellants failed to preserve all but one of their arguments, which we find lacks merit because it misconstrues the trial court’s order to reach an issue that was not explicitly addressed;
 
 *323
 
 consequently, we also affirm as to the second issue.
 

 Factual Background
 

 This appeal arises out of a 13-year dispute regarding Appellants’ effort to obtain the contract rights to build and operate a concession stand on a pier at Santa Rosa Island. Initially, Appellants finished first in the Request for Proposal (RFP) process, meaning they were selected as the firm of first preference with whom the Santa Rosa Island Authority (SRIA) would commence contract negotiations. Appel-lees subsequently threatened litigation regarding the legality and/or propriety of the bid process, prompting the SRIA to cease contract negotiations with Appellants and reopen the RFP process. The SRIA ultimately awarded the contract to Appellees.
 

 Appellants then filed suit against the SRIA. The circuit court ordered that SRIA reinstate contract negotiations with Appellants, but that decision was reversed by this court in
 
 Santa Rosa Island Authority v. Pensacola Beach Pier, Inc.,
 
 834 So.2d 261 (Fla. 1st DCA 2002). Appellants later filed the complaint that ultimately led to the final summary judgment addressed here.
 

 Appellants’ tortious interference claim concerned Appellees’ successful efforts to restart the RFP process without filing a formal bid protest or commencing litigation. The trial court found that Appellants were in the process of negotiating a final contract after finishing first in the bidding process, but had not yet entered into the contract when the SRIA decided to suspend negotiations. The trial court also referred to this court’s opinion from the first appeal, in which we held that “[a]b-sent evidence of illegality, fraud, oppression, or misconduct,” Appellants were without a remedy with respect to the SRIA’s decision to readvertise for new proposals and rearrange the preference order of the bidders.
 
 Id.
 
 at 263. The trial court ultimately ruled that “[t]here was no contractual business relationship with which [Appellants] could have interfered and therefore [Appellants] cannot recover on this cause of action.”
 

 Appellants’ defamation cause of action stemmed from various statements and allegations contained in correspondence sent by and on behalf of Appellees, as well as in attachments to some of that correspondence, all of which was sent to the SRIA as part of their effort to reopen the RFP process. Appellants alleged some of Ap-pellees’ statements accused Appellants of illegal activity before and during the RFP process, which allegedly helped Appellants prevail in the first round of bidding.
 

 The trial court found that the “bases of the defamation count are the letters that were sent by or on behalf of King ... and Pinzone,” and that “it is undisputed that the letters themselves do not contain any statements about [Appellants]. Instead the letters questioned the bid process and notified the [SRIA] that a formal protest was a possibility.” The court added that it found “that there is a privilege to question proposed governmental action.” It also found that the “letters clearly expressed an opinion that the winning bid did not meet the minimum requirements as set forth in the request for proposals, but made no statements about [Appellants] which could in any way be construed as defamatory.”
 

 Appellants did not file a motion for rehearing, "clarification, a motion to vacate, or for relief from the judgment. As we explain below, this was critical under the circumstances.
 

 Interference with Business Relationship Claim
 

 Appellants argue that the trial court erred by entering final summary judgment
 
 *324
 
 on their claim for tortious interference with a business relationship because there was “no contractual business relationship” with which Appellees could interfere, thus “mistakenly confusing] the tort of tortious interference with a business relationship with that of tortious interference with contract ” Although this point is well taken, Appellants failed to preserve this argument.
 

 The trial court’s error appeared for the first time on the face of the final summary judgment. Appellants, however, did not file a motion for rehearing, motion to vacate, or motion for relief from judgment in an attempt to correct this error; consequently, Appellants failed to preserve their otherwise meritorious argument.
 
 See, e.g., D.T. v. Fla. Dep’t of Children & Families,
 
 54 So.3d 632, 633 (Fla. 1st DCA 2011) (holding appellant failed to preserve argument that court’s order was deficient due to lack of statutorily required findings because she did not file a motion for rehearing);
 
 Holland v. Cheney Bros., Inc.,
 
 22 So.3d 648, 650 (Fla. 1st DCA 2009) (holding, “ ‘[i]n workers’ compensation cases,
 
 as in other cases,
 
 we will not consider arguments which were not presented in a meaningful way to the lower tribunal.’ ”) (quoting
 
 Jettison v. Dixie S. Indus., Inc.,
 
 857 So.2d 365, 366 (Fla. 1st DCA 2003) (emphasis added));
 
 Lake Sarasota, Inc. v. Pan. Am. Sur. Co.,
 
 140 So.2d 139, 142 (Fla. 2d DCA 1962) (holding, where appellants raised for the first time on appeal that they disagreed with the trial court’s statement in its summary judgment order that the facts were undisputed, “[i]t is the duty and responsibility of the attorneys in a cause to see that the orders entered by the trial court are in proper form and substance and that they correctly recite the record. Any incorrect statements made in any order should be promptly brought to the attention of the court.”);
 
 cf. Hooters of America, Inc. v. Carolina Wings, Inc.,
 
 655 So.2d 1231, 1234-35 (Fla. 1st DCA 1995) (holding claim that award of damages to plaintiff was improper because it encompassed damages related to four restaurants while complaint only referred to one restaurant, was not waived by fact that claim was not raised before trial court in motion for rehearing or motion to set aside default judgment, as resulting due process violation was fundamental error warranting review on appeal).
 

 In such an instance, the trial court should be afforded an opportunity to correct the error before the aggrieved party seeks reversal of the order on appeal. Indeed, the rehearing rule, Florida Rule of Civil Procedure 1.530, provides: “When an action has been tried by the court without a jury, the sufficiency of the evidence to support the judgment may be raised on appeal whether or not the party raising the question” has made an objection to the trial court or “made a motion for rehearing, for new trial, or to alter or amend the judgment.” Fla. R. Civ. P. 1.530(e). Implicit in this rule is that, in all other instances in which there is a concern about a judgment, it is necessary to file one of the enumerated motions to preserve the issue for appeal.
 

 This should not be read, however, as requiring a party displeased with a trial court’s decision on a matter because it found the opposing argument more persuasive to file such a motion to reargue the case. Rather, such post-judgment motions are necessary, for example, to preserve errors appearing for the first time in the judgment itself or, where applicable, there were errors during trial, or a judgment entered after a jury trial is not supported by the evidence.
 

 Appellants also raised an alternative argument on this issue:
 

 
 *325
 
 [Appellant] also submitted evidence from which the jury could determine that the actions taken by King and Pinzone amounted to ‘intentional and unjustified interference’ with the negotiations ... Further, while King and Pinzone could have filed a timely protest of the bidding process — thereby permitting PBPI to respond to the allegations and to be judged by a neutral finder of fact — King and Pinzone instead simply threatened litigation after missing the deadline to file a formal protest. Thus, a jury could find not only that the conduct was intentional, but that it was tortious and unjustified as well.
 

 Appellants never made this argument below. In one of their responses to the summary judgment motions, Appellants did not address the tortious interference claim at all; in another, they made a general argument that Appellees failed to meet their burden for entitlement to final summary judgment, but again did not address the interference claim. In their “Supplementary Omnibus Response” to the summary judgment motions, Appellants argued that the facts failed to negate the existence of a business relationship between Appellants and the SRIA with which they alleged Appellees wrongfully interfered. Finally, the record reflects that the only issues discussed during the final summary judgment hearing concerned the parties’ respective evidentiary burdens regarding summary judgment, whether certain legal memoranda was filed timely, and scheduling matters.
 

 “ ‘In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.’ ”
 
 Sunset Harbour Condo. Ass’n v. Robbins,
 
 914 So.2d 925, 928 (Fla.2005) (quoting
 
 Tillman v. State,
 
 471 So.2d 32, 35 (Fla.1985)). As discussed, Appellants’ alternative argument was not raised below; consequently, it was not preserved and cannot be a ground for reversing the trial court.
 

 Defamation Claim
 

 Appellants’ preservation difficulty extends to the defamation issue. The trial court found that the basis of Appellants’ defamation claim concerned statements contained in correspondence sent on behalf of Appellees King and Pinzone. The court found that it was “undisputed that the letters themselves do not contain any statements about [Appellants].” Rather, the court determined, “the letters questioned the bid process and notified the Santa Rosa Island Authority that a formal bid protest was a possibility.” Appellants raise three arguments as to this finding.
 

 Appellants first argue that Appellees did not seek summary judgment on this basis, thus, it was error to grant their motion on this ground. To the extent this may have constituted error, the error appeared for the first time on the face of the judgment. Because Appellants never filed a motion for rehearing or sought any other post-judgment relief on this or any other ground, this argument was not preserved.
 

 Appellants’ second argument is that the “letters, on their face, allege that
 
 someone
 
 engaged in “[i]llegal bidding procedures,” and that the documents attached to some of the letters in question accused Appellants of “prohibited ‘pre-proposal negotiations’ and improper meetings with” the SRIA and its staff. These statements, Appellants assert, were “slander per se,” because they accused them of illegal actions. Appellants failed to preserve this argument for two reasons. First, the trial court’s order is silent as to any statements contained in the attachments to the letters,
 
 *326
 
 and Appellants did not file a motion for rehearing asking the court to make a finding regarding those statements. Secondly, they did not file a motion to clarify whether the court’s conclusion applied to those statements or was limited to those in the letters themselves.
 
 Williamson v. Cowan,
 
 49 So.3d 867 (Fla. 5th DCA 2010) (holding, “[b]ecause Appellant never challenged the adequacy of the findings in a motion for rehearing ... the issue was not properly preserved for appellate review.”).
 

 Also, even if the trial court’s finding did include the statements in the attachments, the other preservation hurdle Appellants failed to surmount is that they never argued below that any of the statements at issue were defamatory per se.
 
 See Robbins,
 
 914 So.2d at 928.
 

 This same fate befalls Appellants’ third argument, in which they assert that the trial court “ [presumably ... reached its decision by interpreting the letters as accusing members of the SRIA — rather than [Appellants] — of engaging in ‘illegal activity1 ” and, under Florida law, “ ‘if an allegedly defamatory publication is reasonably susceptible of two meanings, one of which is defamatory and one of which is not, it is for the trier of fact to determine the meaning understood by the average reader.’” (quoting
 
 Ford v. Rowland,
 
 562 So.2d 731, 734 (Fla. 5th DCA 1990)). Again, Appellants never made this argument below, either in response to Appellees’ summary judgment motions and supporting legal memoranda, or in a motion for rehearing, despite the fact that it was Appellees’ position then, and now, that all of the statements at issue were addressed to questioning the RFP process. Thus, it was not preserved.
 

 Appellants’ final argument relating to the defamation issue fails for a different reason. They assert that the trial court entered final summary judgment on their defamation claim because the statements at issue were privileged because they “questioned a proposed governmental action.” Appellants argue this was error for two reasons: 1) the case cited by the trial court does not support this conclusion; and 2) the litigation privilege recognized by Florida law does not apply here because the statements were not made as part of any pending litigation, or as part of any communications that were a necessary condition precedent to judicial or administrative action. Rather, Appellants argue, the statements were made in communications threatening future litigation, which are not privileged. Although this is an interesting issue, we need not reach it here. The trial court’s finding regarding privilege was in the context of finding that none of the statements were addressed to Appellants but, rather, addressed solely to the RFP process. Thus, the court found, the statements were privileged because they questioned the SRIA’s actions. The court did not find that, even if some or all of the statements were addressed to Appellants, they were subject to the litigation privilege. If the latter were the case, the issue would be appropriate for our consideration.
 

 Conclusion
 

 It is difficult to overemphasize the importance, absent fundamental error, of preserving issues and arguments before asking an appellate court to reverse a trial court’s final judgment. The importance of this principle is too often not appreciated, and appellate courts are constrained, as we are here, to affirm orders which otherwise might have been reversed.
 

 AFFIRMED.
 

 HAWKES, J., Concurs; ROBERTS, J., Concurs in Result Only.
 

 [1]
 

 . Appellants voluntarily dismissed Appellee Clyde Patroni from the suit prior to entry of summary judgment.
 

 [2]
 

 . Appellants’ appeal as the first two counts involve Appellees King and Pinzone, only.